## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

---

COLUMBIA & BIG BIGBY TURNPIKE CO. *v.* T. W. ENGLISH.

## (*Nashville.* December Term, 1917.)

1. **NEGLIGENCE. Proximate cause. Concurrent causes.**

Where two causes proximately contribute to an injury sued for, for only one of which defendant is responsible, and with the other of which neither party is chargeable; defendant must be held liable. (*Post, pp.* 637, 638.)

Cases cited and approved: Sullivan County v. Ruth & Co., 106 Tenn., 85; Sowles v. Moore, 65 Vt., 322.

2. **TURNPIKES AND TOLL ROADS. Action for injury. Evidence. Negligence. Proximate cause.**

In an action against a turnpike company for injury to a traveler passing over a bridge, evidence *held* to sustain a finding of negligence in failing to fence one side of an approach thereto, and that this contributed as a proximate cause to the injury. (*Post, pp.* 638, 639.)

3. **APPEAL AND ERROR. Harmless error. Instructions.**

In view of Acts 1911, chapter 32, providing that no verdict or judgment will be set aside and new trial granted unless error complained of has affected the result, there can be no reversal for error, if any, in refusing a charge where it did not affect the result. (*Post, pp.* 638, 639.)

(634) [139 Tenn.

Columbia & Big Bigby Turnpike Co. v. English.

Acts cited and construed: Acts 1911, ch. 32.

Cases cited and approved: Walrod v. Webster County, 110 Iowa, 349; Gould v. Schermer, 101 Iowa, 582; Strange v. Bodcaw Lumber Co., 79 Ark., 490; Augusta v. Hudson, 94 Ga., 135; Baltimore & R. Turnpike Road v. State, 71 Md., 573; Baldwin v. Greenwoods Turnpike Co., 40 Conn., 238; Ivory v. Deerpark, 116 N. J. 476; Sturgis v. Kountz, 165 Pa., 358; Beopple v. Railroad, 104 Tenn., 420; Coleman v. Bennett, 111 Tenn., 705.

FROM MAURY.

Appeal from the Circuit Court of Maury County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —W. B. TURNER, Judge.

HOLDING & GARNER, for Turnpike Co.

C. P. HATCHER and W. S. FLEMING, for English.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error hereinafter called the defendant, was sued by English, hereinafter called the plaintiff, to recover damages for an injury inflicted upon him under the following circumstances:

Defendant was the owner of a covered bridge over a waterway in Maury county. This bridge had an approach of considerable length and height. There was evidence tending to show that there was a de-

fective railing on the south side near the mouth of the bridge; also that there was an open space some twelve feet in length at the end of the railing on the north side, which, in the exercise of due diligence, ought to have been protected by a railing; that between twelve and one o'clock on the night of the injury plaintiff, riding in a buggy, emerged from the bridge upon the approach, and that his horse became frightened at a covered wagon which had fallen over the south side of the approach breaking down the railing that had been there, that the horse, being so frightened, ran along the approach until he reached the open space on the north referred to; that this space was steep and rugged, and, as the result of the horse's running down this declivity, the plaintiff was thrown out and seriously injured. There was evidence to the effect that the covered wagon had been cast on the side of the approach some hours before the defendant passed over the bridge; that from some unknown cause the mules attached to the wagon, which was heavily loaded, became frightened, and backed the wagon over against the railing on the south side and broke it down; that the progress of the wagon down the slope was arrested by the ends of the load, some long pieces of iron or timber, thus suspending the wagon on the side of the approach. There was evidence from which the jury could have inferred, had they been so minded, the impact of the wagon upon the south railing was so violent that it would have broken the railing down even if it had

been properly constructed. There was also evidence that the deposit of the wagon was so recent that the defendant could not be charged with notice of it, only a few hours having elapsed from the breaking down of the south railing and the passage of the plaintiff and his injury, both having occurred after dark on the same night.

The jury brought in a verdict in favor of the plaintiff for $7,000 damages. The trial judge suggested a remittitur of $2,200, which was accepted under protest; then judgment was rendered for the plaintiff for $4,800; then both sides appealed to the court of civil appeals, and there the judgment was affirmed. Both sides then brought the case to this court by the writ of *certiorari;* the plaintiff complaining of the reduction of the verdict.

Defendant insists that, if the impact of the wagon and team upon the south railing was so violent that it would have broken that railing down even if it had been properly constructed, it could not be charged with the consequences of the wagon's exposure on the side of the approach at the time defendant in error's horse was frightened by it; that is to say, even if defendant was negligent in having failed to erect a proper railing on the south side, that negligence could not be operative as a proximate cause of the fright of the horse, chargeable to him, and hence as one of the proximate causes of the injury so chargeable, if the team of mules forced the wagon back against the railing with such momentum and weight

that a proper railing would not have withstood it; this violence intervening defendant's negligence and the fright of the horse. *Sullivan County* v. *Ruth & Co.*, 106 Tenn., 85, 59 S. W., 138; *Sowles* v. *Moore*, 65 Vt., 322, 26 Atl., 629, 21 L. R. A., 723. Plaintiff in error presented a request in requisite form asking the trial judge to so instruct the jury, which was refused.

Let us assume that this instruction should have been given. Was the refusal to give it a reversible error? We think not. The better rule is that, where there were two causes which proximately contributed to the injury, for only one of which the defendant was responsible, and with the other of which neither he nor the plaintiff was chargeable, still the defendant must be held to answer for the injury inflicted. A few of the authorities in other States sustaining this rule are the following: *Walrod* v. *Webster County*, 110 Iowa, 349, 81 N. W., 598, 47 L. R. A., 480; *Gould* v. *Schermer*, 101 Iowa, 582, 70 N. W., 697; *Strange* v. *Bodcaw Lumber Co.*, 79 Ark, 490, 96 S. W., 152, 116 Am. St. Rep., 92; *Augusta* v. *Hudson*, 94 Ga., 135, 21 S. E., 289; *Baltimore & R. Turnpike Road* v. *State*, 71 Md., 573, 18 Atl., 884; *Baldwin* v. *Greenwoods Turnpike Co.*, 40 Conn., 238, 16 Am. Rep., 33; *Ivory* v. *Deerpark*, 116 N. J., 476, 22 N. E., 1080; *Sturgis* v. *Kountz*, 165 Pa., 358, 30 Atl., 976, 27 L. R. A., 390. The same rule is recognized in our own State in *Beopple* v. *Railroad*, 104 Tenn., 420, 58 S. W., 231; *Coleman* v. *Bennett*, 111 Tenn., 705, 69 S. W., 734.

Say the defendant was not responsible for the wagon's being on the side of the approach, and therefore not chargeable with the fright of the horse; still it was responsible for the failure to fence the part of the northern side of the approach at the place where the horse left it and ran down its steep side, throwing plaintiff from his buggy. Under the evidence the jury was warranted in finding the failure to fence this place was negligence, and that this negligence contributed as a proximate cause to the injury. Therefore, under the rule stated, the defendant was liable for the injury even if innocent of the occurrence which scared the horse. The jury, if properly instructed, could have done no more than find defendant innocent of scaring the horse, yet guilty of producing the accident because of failure to fence the north side. So the error in refusing to charge as requested, if error there was, did not affect the result, and under such circumstances there can be no reversal. Acts 1911, chapter 32.

There was no error in the action of the trial judge and the court of civil appeals entering a judgment for $4,800. Under the evidence we are satisfied they reached a just result. The judgment of the court of civil appeals must therefore be affirmed.

The plaintiff will pay one-fourth of the costs, and the defendant three-fourths.