IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 2000 Session

# LINDA K. PLUNK, ET AL. v. NATIONAL HEALTH INVESTORS, INC.

**Appeal from the Circuit Court for Lawrence County**
**No. CC-381-97     Robert L. Jones, Judge**

---

**No. M1999-01596-COA-R3-CV - Filed June 7, 2002**

---

This appeal involves a nursing home visitor who injured herself by stepping into a grassy depression in the building's landscaping. The visitor and her husband filed suit in the Circuit Court for Lawrence County alleging that the nursing home's owner had failed to maintain the premises in a reasonably safe condition. A jury apportioned sixty percent of the fault to the nursing home and forty percent to the visitor and awarded the visitor $40,000 for medical expenses and permanent impairment. Both parties filed post-trial motions after the trial court entered a $24,000 judgment for the visitor. The visitor and her husband sought a new trial or an additur because the jury had not awarded damages for pain and suffering. The nursing home filed a Tenn. R. Civ. P. 50.02 motion for a judgment in accordance with its motion for a directed verdict. The trial court denied the nursing home's motion and suggested a $5,000 additur. The nursing home accepted the additur, and both parties appealed. The visitor asserts that the trial court erred by failing to grant a new trial, and the nursing home asserts that the trial court erred by denying its Tenn. R. Civ. P. 50.02 motion. We have determined that the trial court erred by denying the nursing home's Tenn. R. Civ. P. 50.02 motion because it was not reasonably foreseeable that visitors would be walking on the grassy area where the plaintiff fell. Accordingly, we reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Randy Hillhouse, Lawrenceburg, Tennessee, for the appellants, Linda K. Plunk and Billy M. Plunk.

William C. Moody, Nashville, Tennessee, for the appellee, National Health Investors, Inc.

**OPINION**

**I.**

Linda Plunk and her husband live in Lawrenceburg. On November 17, 1996, they decided to visit Ms. Plunk's mother who was residing at the old Scott Hospital that was being operated as a nursing home by National Health Investors, Inc. ("NHC Healthcare"). While Ms. Plunk visited

her mother, Mr. Plunk drove to Wal-Mart. Ms. Plunk bid her mother good-bye when she saw Mr. Plunk drive back to the nursing home. After her mother expressed an interest in seeing Mr. Plunk, Ms. Plunk told her to look out her window and that she would have Mr. Plunk waive to her as they drove away.

After Ms. Plunk left the building, she motioned her husband to pull around the circular drive to get closer to the window to her mother's room. Then, instead of getting into the couple's automobile, Ms. Plunk stepped off a concrete walkway leading to the circular drive, over the asphalt curb of the driveway, and onto a small grassy area that was part of the landscaping adjoining the building. She walked closer to her mother's window and waived to her mother while Mr. Plunk waived from the SUV. As Ms. Plunk walked back toward her automobile, she stepped in a depression in the grass and fell, breaking both of her ankles.

Ms. Plunk was hospitalized for ten days and was required to undergo surgery to repair her right ankle. After she was released from the hospital, she spent three weeks at a rehabilitation facility undergoing therapy. She was at first confined to a wheelchair, but she eventually progressed to a walker and then to a cane. Ms. Plunk's injuries have left her permanently impaired, and it is unlikely that her right ankle will ever regain its full range of motion.

The Plunks filed suit against NHC Healthcare in the Circuit Court for Lawrence County, alleging that the company had failed to maintain its premises in a reasonably safe condition. NHC Healthcare responded by insisting that it had breached no duty it owed to Ms. Plunk under the circumstances. The trial court submitted the case to a jury after denying NHC Healthcare's motions for a directed verdict at the close of the plaintiff's case and at the close of all the evidence. The jury determined that Ms. Plunk had incurred $35,000 in medical expenses and assessed her damages for permanent impairment at $5,000. However, the jury made no award to Mr. Plunk for the alleged loss of Ms. Plunk's society and services and specifically found that Ms. Plunk "did not suffer any pain and suffering, loss of capacity for enjoyment of life, [or] past disfigurement, and did not suffer any pain and suffering, loss of capacity for enjoyment of life, and disfigurement for the future." The jury also allocated sixty percent (60%) of the fault to NHC Healthcare and forty percent (40%) of the fault to Ms. Plunk. Accordingly, the trial court entered a judgment in Ms. Plunk's favor for $24,000.[1]

Both parties filed timely post-trial motions. Ms. Plunk moved for an additur, or in the alternative a new trial, on the ground that the verdict was inconsistent and inadequate because it did not include an award for pain and suffering. NHC Healthcare filed a Tenn. R. Civ. P. 50.02 motion for a judgment in accordance with its motions for directed verdict. The trial court denied NHC Healthcare's motion as well as Ms. Plunk's motion for a new trial. However, the trial court suggested a $5,000 additur[2] which NHC Healthcare accepted. Both parties have appealed, attacking

---

[1]$40,000 [total damages] × 60% [NHC Healthcare's fault] = $24,000.

[2]The trial court stated that the award for pain and suffering "should have been equal to the amount awarded
(continued...)

the judgment from opposite directions. Ms. Plunk insists that the trial court should have granted a new trial because the damage award is too low.[3] For its part, NHC Healthcare insists that the trial court erred by failing to grant its motion for a directed verdict because the evidence does not establish that it breached any duty of care it owed to Ms. Plunk. If NHC Healthcare prevails, Ms. Plunk's arguments regarding the inadequacy of the damage award become largely academic. Accordingly, we will take up NHC Healthcare's issue first.

## II.

Tenn. R. Civ. P. 50.02 permits parties who have moved unsuccessfully for a directed verdict to move after the verdict "to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict . . . ." Appellate courts use the same standard for reviewing the denial of a Tenn. R. Civ. P. 50.02 motion that they use for reviewing the denial of a Tenn. R. Civ. P. 50.01 motion for a directed verdict. *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). Accordingly, appellate courts do not weigh the evidence, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992), or evaluate the credibility of the witnesses. *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Instead, they review the evidence most favorably to the party against whom the motion is made, give that party the benefit of all reasonable inferences from the evidence, and disregard all evidence contrary to that party's position. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994).

Granting a Tenn. R. Civ. P. 50.02 motion is appropriate only when the evidence is insufficient to create an issue for the jury to decide, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999); *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 176 (Tenn. Ct. App. 1991), or when reasonable minds can reach only one conclusion. *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980). A jury's verdict should not be supplanted under Tenn. R. Civ. P. 50.02, even if the facts are undisputed, when reasonable persons could draw conflicting conclusions from the facts. *Gulf, M. & O.R.R. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993).

## III.

NHC Healthcare premised its Tenn. R. Civ. P. 50.02 motion on the argument that it did not owe a duty to Ms. Plunk to maintain its landscaping in a way that it made it safe for her to traverse. This issue raises a legal question because determining the existence and extent of one person's duty

---

[2](...continued)
for permanent impairment."

[3]Mr. Plunk has not appealed from the jury's verdict rejecting his claims against NHC Healthcare.

to another is a question of law to be decided by the courts. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *Green v. Sacks*, 56 S.W.3d 513, 519 (Tenn. Ct. App. 2001).

Owners and occupiers of business premises are not insurers of the safety of their customers, potential customers, or the general public. *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 902 (Tenn. 1996); *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000). They have only a duty to use reasonable care to protect their customers from unreasonable risks of harm. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984). This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired. *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Basily v. Rain, Inc.*, 29 S.W.3d at 883.

A duty to act with due care arises when the risk of harm becomes unreasonable, and a risk of harm becomes unreasonable "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Rice v. Sabir*, 979 S.W.2d at 308; *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a risk of harm is unreasonable, the courts consider

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998) *clarified in Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *McCall v. Wilder*, 913 S.W.2d at 153.

The extent that harm is foreseeable plays a pivotal role in this analysis. The courts will not impose a duty on a business to protect persons who come on its premises from unforeseeable harm. However, they will impose a duty on a business to protect persons coming on the property from harm that is reasonably foreseeable. As the Tennessee Supreme Court has noted, "the degree of foreseeability needed to establish a duty of care decreases in proportion to the [increase in the] magnitude of the foreseeable harm." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994). Consequently, to prevail in a premises liability action, the plaintiff must show that the injury was reasonably foreseeable and that some action by the owner more probably than not would have prevented it. *Dobson v. State*, 23 S.W.3d 324, 331 (Tenn. Ct. App. 1999).

Premises liability cases such as this one arrange themselves around one organizing principle. Owners and occupiers of business premises have a duty to maintain their premises in a safe manner only in areas where customers or the public will foreseeably be present. *Aluminum Co. of Am. v.*

*Baker*, 542 S.W.2d 819, 821 (Tenn. 1976) (a parking lot); *Johnson v. Tennessean Newspaper*, 192 Tenn. 287, 291, 241 S.W.2d 399, 401 (1951) (a public park); *Schrader v. Kentucky-Tenn. Light & Power Co.*, 157 Tenn. 391, 399-402, 8 S.W.2d 495, 497-98 (1928) (the ground between a sidewalk and a parking lot); *Winstead v. Goodlark Reg'l Med. Ctr., Inc.*, No. M1997-00209-COA-R3-CV, 2000 WL 343789, at *1, 5 (Tenn. Ct. App. April 4, 2000) (No Tenn. R. App. P. 11 application filed) (a sidewalk); *Kenning v. HCA Health Servs. of Tenn., Inc.*, No. M1998-00482-COA-R3-CV, 1999 WL 1206697, at *1, 5 (Tenn. Ct. App. Dec. 17, 1999) (No Tenn. R. App. P. 11 application filed) (a drive-through lane used by pedestrians as an alternate route); *Byrd v. State*, 905 S.W.2d 195, 196-97 (Tenn. Ct. App. 1995) (shoulders of roadway used by pedestrians where there were no sidewalks); *Great Atl. & Pac. Tea Co. v. Lyle*, 49 Tenn. App. 78, 81-85, 351 S.W.2d 391, 394-95 (1961) (a parking lot); *East Tenn. Light & Power Co. v. Gose*, 23 Tenn. App. 280, 284, 130 S.W.2d 984, 986 (1939) (a store aisle); *Jackson v. City of Nashville*, 17 Tenn. App. 413, 415, 68 S.W.2d 137, 139 (1932) (a street without sidewalks). Conversely, the law will not impose a duty on property owners and businesses to use care to maintain places where it is not reasonably foreseeable that customers or the public will be present. *Dobson v. State*, 23 S.W.3d at 329, 330-31; *Bivin v. Southern Oil Serv., Inc.*, 54 Tenn. App. 678, 689, 394 S.W.2d 141, 146 (1965).

The circumstances of this case are similar to *Dobson v. State* where a visitor to the campus of the University of Tennessee at Martin tripped over a metal landscape border while detouring across a lawn instead of using a nearby sidewalk leading to the customary entrance to the building where she was going. We affirmed the Claims Commission's conclusion that the visitor was more negligent than the University because she had eschewed the sidewalk plainly provided for pedestrians. *Dobson v. State*, 23 S.W.3d at 329. We concluded that Ms. Dobson's actions were not foreseeable and, correspondingly, concluded that the university was not liable for her injuries. *Dobson v. State*, 23 S.W.3d at 331-32.

In this case, Ms. Plunk walked onto and fell in a small plot of grass that was part of the landscaping between the nursing home's circular driveway and the building. This small plot of grass existed for aesthetic purposes and was not intended to provide a pathway from or to places at the nursing home where patients, their families, or other guests would be expected to go. Ms. Plunk impulsively left the concrete sidewalk and pavement that had been constructed for persons entering and leaving the nursing home and ventured into the landscaping near her mother's window. Based on the facts of this record, there is no basis to hold NHC Healthcare to the duty of anticipating that visitors to the nursing home might leave the sidewalks and paved surfaces provided for their convenience and venture into the landscaping. Thus, because Ms. Plunk's actions were not reasonably foreseeable, we conclude as a matter of law that NHC Healthcare did not have a duty to maintain this small grassy area in a way that would make it safe for pedestrian traffic.

A moving party is entitled to a directed verdict if the opposing party fails to present evidence establishing a prima facie case. *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995). To make out a prima facie negligence claim, Ms. Plunk was required to prove that NHC Healthcare breached a duty of care that it owed to her. This she failed to prove. Accordingly, the trial court erred by failing to grant NHC Healthcare's motion for a directed verdict at the close of the plaintiffs' proof.

**IV.**

We reverse the judgment and remand the case to the trial court with directions that Ms. Plunk's negligence claim be dismissed.[4]  The costs of this appeal are taxed to Linda K. Plunk and her surety for which execution, if necessary, may issue.


_____
WILLIAM C. KOCH, JR., JUDGE

---

[4]In light of our decision that NHC Healthcare was entitled to a directed verdict, we pretermit Ms. Plunk's arguments that the jury's verdict was inconsistent, inadequate, and against the weight of the evidence.